IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEVIN C. HAGEN** | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) **Civil Action No. 05-0559** |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| Commissioner of Social Security, | ) |
|     Defendant | ) |

**MEMORANDUM OPINION**

**April 20, 2006**

**I.**     **Introduction**

Plaintiff Kevin C. Hagen brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under titles II and XVI, respectively, of the Act.

After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the memoranda of the parties, and the entire record, the Court finds the ALJ's decision is supported by substantial evidence, and therefore will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and enter judgment in favor of the Commissioner.

**II.     Procedural History**

Plaintiff filed his application for DIB and SSI on May 27, 2004, alleging that he was unable to work because of fractures, angina, emphysema, arthritis, headaches, tendonitis, testicular cyst, and anxiety. This initial application was denied and plaintiff timely requested a hearing by an ALJ from the Social Security Administration. Although represented by counsel, plaintiff submitted a waiver of the right to personal appearance before the ALJ on October 13, 2004, whose decision was therefore issued based on the medical records and forms.

In a decision dated November 24, 2004, the ALJ determined that plaintiff was not entitled to a period of disability, DIB or SSI under §216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. The ALJ found that plaintiff had no non-exertional limitations. (Record "R." at 18, 20). As to physical disability, the ALJ found that although plaintiff had a severe impairment of the right hand, such impairment did not meet nor medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ also found that plaintiff had the residual functional capacity to meet the exertional demands of light work. (R. at 18). The ALJ concluded that plaintiff's residual functional capacity did not preclude plaintiff from performing his past relevant work as a security guard.

Plaintiff filed a "Request for Review of Hearing Decision/Order" which, on February 23, 2005, the Appeals Council denied. Thus, the decision of the ALJ was deemed to be the decision of the Commissioner. Plaintiff brought this action seeking judicial review of the ALJ's decision.

### III.     Statement of the Case

Because plaintiff did not appear at the hearing the ALJ could only consider the medical records and plaintiff's subjective complaints of anxiety and pain as set forth in his Request for Review of Hearing Decision/Order (R. at 9), Request for Hearing by Administrative Law Judge (R. at 29), and his Daily Activities Questionnaire ("Questionnaire") (R. at 65). The ALJ found that plaintiff's daily activities consisted of:

> driving, shopping, cooking, taking out the trash and paying his bills.
> Plaintiff also performs his own house cleaning such as cleaning the
> sink, commode, ceramic floors, low pile wall to wall carpet, whisking,
> and dusting. (R. at 16).  For enjoyment, he listens to music, plays
> video games and cards, watches DVD's, and talks with friends. (R. at
> 16).

The ALJ examined plaintiff's claims of anxiety and found that they were not a medically determinable condition because there was no medical support of marked limitation.  (R. at 15). The ALJ also gave consideration to all of the claimant's musculoskeletal system complaints in accordance with the revised musculoskeletal listings published at 66 FR 58010, finding they did not rise to listing level.  (R. at 160).

The ALJ made the following specific findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
3. The claimant has a nondisplaced fracture at the base of the fifth metacarpal of the right hand that is a "severe" impairment based upon the requirements in the Regulations. (20 C.F.R. §§ 404.1520 and 416.920).
4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
6. The claimant has the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds.  20 C.F.R. §§404.1567 and 416.967. Additionally, the claimant has no non-exertional limitations.
7. The claimant's past relevant work as security guard did not require the performance of work-related activities precluded by his residual functional capacity.  20 C.F.R. §§404.1565 and 416.965.
8. The claimant's medical determinable fracture of the metacarpal of the right hand does not prevent the claimant from performing his past relevant work.
9. The claimant's impairment fracture of the metacarpal of the right hand does not meet the duration requirement as set forth in 20 C.F.R. §§404.1521 and 416.921.
10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.  (20 C.F.R. §§404.1520(f) and 416.920(f)).

On appeal, plaintiff asserts that the ALJ erred in not obtaining the opinion of a Vocational Expert ("VE") because he had both exertional and non-exertional impairments.

### IV.   Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

---

[1]
Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2]
Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final

transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding DIB, and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, SSI, disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.

---

determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for

rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461,

*citing* 42 U.S.C. § 423 (d)(2)(A).  In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068

(3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c) (2002); 20 C.F.R. § 416.929. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993)

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about

whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(i); 20 C.F.R. § 416.927 (f)(2)(i). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V.    Discussion

Plaintiff argues that the ALJ erred in failing to obtain an expert opinion from a VE to determine whether he could perform light duty work or his former job as security guard in light of his exertional and non-exertional impairments. "Limitations or restrictions which affects one's ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling are considered non-exertional." 20 C.F.R. §404.1569a. Some examples of non-exertional limitations or restrictions include nervousness, anxiousness, depression and pain. Their common quality is that they lead to symptoms that affect the ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §404.1569c. If the claimant has non-exertional impairments, or a combination of exertional and non-exertional impairments, the testimony of a VE or other similar evidence, such as a learned treatise, is necessary for the Commissioner to establish that there are jobs in the

national economy that someone with plaintiff's exertional and non-exertional impairments could perform. *Sykes v. Apfel,* 228 F.3d 259, 273 (3d Cir. 2000); *Gilliland v. Heckler,* 786 F.2d 178 (3d Cir. 1986); *Mac v. Sullivan,* 811 F.Supp. 194, 198 (E.D. Pa. 1993).

Plaintiff's argument that the ALJ erred in not securing the opinion of a VE fails at the outset. The ALJ found that there were no non-exertional impairments. As this decision was supported by substantial evidence the ALJ was not required to meet the burden of establishing that there were jobs in the national economy that a plaintiff with exertional and non-exertional impairments could perform.

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. §404.1508. "(a) *Symptoms* are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §404.1528.

Plaintiff's applications and brief suggest that he suffers from anxiety, mood disorder and depression. (R at 48, 49, 50, 66, 73, 76, 77.) The Listed Mental Impairment which plaintiff allegedly most closely approximates is Listing 12.06, Anxiety Related Disorders.

Listing 12.00, Mental Impairments, provides that the "evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months." Anxiety-related disorders, 12.06, consist of a

"statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) . . ." for Listing 12.06, as is set forth more fully below:

> **12.06 Anxiety Related Disorders**: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met *when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.*
>
> A. Medically documented findings of one of the following:
>
> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>
>    a. Motor tension; or
>    b. Autonomic hyperactivity; or
>    c. Apprehensive expectation; or
>    d. Vigilance and scanning; or
>
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

>	AND
>
>	B. Resulting in at least two of the following:
>
>	1. Marked restriction of activities of daily living; or
>	2. Marked difficulties in maintaining social functioning; or
>	3. Marked difficulties in maintaining concentration, persistence, or pace; or
>	4. Repeated episodes of decompensation, each of extended duration;
>
>	OR
>
>	C. Resulting in *complete inability to function independently* outside the area of one's home.

Plaintiff failed to prove he suffered any mental impairments by providing medical evidence to support his alleged mental impairment beyond his statements made in briefs and forms. Plaintiff points to no diagnosis by a mental health professional, nor any evidence he even experienced any marked limitation in activities of daily living, social functioning, maintaining concentration, persistence, or pace; or any episodes of decompensation. Plaintiff did not prove any inability to function independently outside the area of one's home.

The ALJ based his decision in part on plaintiff's negative mood disorder screen conducted at the Veteran's Administration Medical Center in Pittsburgh on May 17, 2004. (R. at 158). Furthermore, in a Psychiatric Review Form dated July 1, 2004, Edward Zuckerman, Ph.D., a psychologist from the State Agency, concluded that claimant had no medically determinable impairment despite his subjective complaints of generalized anxiety. (R. at 18, 196). The ALJ relied on Dr. Zuckerman's assessment. (R at 15).

Plaintiff states in his application and in his brief in support of summary judgment that he suffers from pain. (R. at 48). There must be objective medical evidence of some condition that could reasonably produce pain, though there need not be objective evidence of the pain itself. There is medical evidence to support the cause of plaintiff's pain and as a result the ALJ was required to consider it in the proceedings.

On April 22, 2004, plaintiff was involved in an altercation while at work and was treated in the Emergency Room at UPMC Presbyterian Shadyside Hospital. His examination was essentially normal except for some tenderness over the lateral aspect of the dorsum of his hand. After x-rays of both of his hands, he was diagnosed with a small nondisplaced fracture at the base of the fifth metacarpal of his right hand. (R. at 17). Dr. Jamie Pfaeffle's June 16, 2004 examination found that plaintiff's right hand was mildly swollen, and slightly hypersensitive. (R. at 18).

The ALJ considered plaintiff's pain but discounted it based on medical evidence and plaintiff's Questionnaire. Dr. Pfaeffle, an orthopedic resident at the Veteran's Hospital examined plaintiff per his request and opined that plaintiff's metacarpal fracture was healing and confirmed by an x-ray of the right hand. (R. at 18). The x-ray, dated June 16, 2004, demonstrated a healed base of the fourth and fifth metacarpal fractures. (R. at 18). An occupational therapist met with plaintiff on June 23, 2004, and she indicated that she expected a decrease in pain within two weeks. Factors such as daily activities are also relevant for the ALJ to consider. 20 C.F.R. §404.1529. The Questionnaire, dated June 30, 2006, plaintiff indicated that he engages in extensive household chores, including cooking, using a broom, carrying multiple shopping bags,

playing video games, and cleaning the sink, ceramic floors, dishes, the low pile wall to wall carpet, whisking, and dusting. (R. at 65, 66).

Although there is a paucity of evidence in the record concerning plaintiff's alleged mental impairments and alleged pain, the substantial weight of it supports the ALJ's conclusion that the claimant's allegations regarding his limitations are not totally credible.

**VI.   Conclusion**

The Court has reviewed the ALJ's findings of fact and conclusions regarding plaintiff's residual functional capacity and his ability to perform his previous employment, and finds that they are supported by substantial evidence for the foregoing reasons.

Accordingly, the Court will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and enter judgment in favor of the Commissioner. An appropriate order will follow.

                                       s/Arthur J. Schwab
                                       Arthur J. Schwab
                                       United States District Judge

cc: all counsel of record